UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN DONALD KERFOOT,<br><br>Defendant. | CR06-252 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendant's pro se motion for compassionate release, docket no. 45. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order DENYING the motion.

**Background**

Defendant Kevin Donald Kerfoot was indicted on July 20, 2006, spent the next roughly ten (10) years fighting extradition from Canada, and was sentenced on July 27, 2017, to 156 months in the custody of the United States Bureau of Prisons ("BOP"). *See* Judgment (docket no. 43). Defendant is currently incarcerated at the Federal Correctional Institution at Fort Dix in New Jersey ("FCI Fort Dix"), and has a projected release date of January 12, 2028. He seeks immediate release on the grounds that his medical conditions

ORDER - 1

(pre-diabetes, hypertension, and hyperlipidemia) and/or the conditions at FCI Fort Dix increase the possibility of acute illness or death from Coronavirus Disease ("COVID").

**Discussion**

A. **Failure to Exhaust Administrative Remedies**

A sentence is generally considered final and may not be altered except in limited circumstances. See 18 U.S.C. § 3582(b); see also Dillon v. United States, 560 U.S. 817, 824 (2010). Pursuant to the First Step Act of 2018, a defendant may directly request a reduction in the term of incarceration, but must first exhaust all administrative remedies. See 18 U.S.C. § 3582(c)(1)(A). Defendant has provided no evidence that he submitted a compassionate-release request to the warden at FCI Fort Dix, and the Government has indicated that BOP has no record of defendant having made the requisite request. Thus, the Court has no jurisdiction to consider defendant's motion for compassionate release. See United States v. Blinks, No. 1:17-CR-248, 2020 WL 5366728, at *1–2 (E.D. Cal. Sept. 8, 2020); see also United States v. Keller, 2 F.4th 1278, 1282 (9th Cir. 2021) (the exhaustion requirement "must be enforced when properly raised by the government").

B. **Medical Conditions Do Not Warrant Compassionate Release**

Even if defendant had exhausted his administrative remedies, he would not be entitled to relief. Defendant bears the burden of establishing "extraordinary and compelling reasons" justifying a reduction in his sentence. See United States v. Powers, No. CR15-166, 2020 WL 3605748, at *1 (W.D. Wash. July 2, 2020); see also 18 U.S.C. § 3582(c)(1)(A)(i). In determining whether "extraordinary and compelling reasons" exist, the Court considers the "helpful guidance" offered by the application notes to

ORDER - 2

United States Sentencing Guideline ("USSG") § 1B1.13. See United States v. Lineberry, No. CR17-175, 2020 WL 6685044, at *1 (W.D. Wash. Nov. 12, 2020). Defendant contends that he is more vulnerable to COVID because of his medical conditions. The Court is not persuaded.

**Pre-Diabetes**: Pre-diabetes is not itself a risk factor for COVID. Rather, it merely means defendant is at risk of developing the risk factor of diabetes. See United States v. Hazam, No. 18-cr-30029, 2020 WL 3265349, at *2 (C.D. Ill. June 17, 2020).

**Hypertension**: Any correlation between hypertension and severe COVID outcomes is "inconclusive." See Centers for Disease Control and Prevention ("CDC"), *Underlying Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (visited on Mar. 30, 2022). Numerous courts have denied release for individuals who suffer from this condition. See, e.g., United States v. Carter, No. CR 107-076, 2020 WL 4194014 (S.D. Ga. July 21, 2020). Moreover, BOP's medical records do not support a finding that defendant even has hypertension. See Ex. A at 7 & 16 (docket no. 52) (defendant's blood pressure was 114/71 on September 20, 2021, and 125/72 on March 8, 2021); see also CDC, *About High Blood Pressure*, available at https://www.cdc.gov/bloodpressure/about.htm (visited on Mar. 30, 2022) (a normal reading is below 120/80 mm Hg).

**Hyperlipidemia**: Hyperlipidemia is not listed among the comorbidities that are associated with higher risk for severe COVID outcomes. See https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. In addition, defendant's medical records indicate that his hyperlipidemia is well-controlled with

ORDER - 3

medication.  *See* Ex. A at 15–18 (docket no. 52) (indicating that defendant receives Atorvastatin, he is compliant with his medications and tolerates them, and his laboratory results as of January 25, 2021, were as follows:  CH 123, TG 155, HDL 23, LDL 89); *see also* CDC, *How and When to Have Your Cholesterol Checked*, available at https://www.cdc.gov/cholesterol/checked.htm (visited on Mar. 30, 2022) (cholesterol (CH) below 200 mg/dL, triglycerides (TG) below 150 mg/dL, HDL more than 50 mg/dL, and LDL less than 100 mg/dL are considered normal).  Defendant has offered no basis for believing that his cholesterol levels pose any COVID-related risk for him.

Indeed, defendant tested positive for COVID in late January 2021, but had no COVID related emergency room visit or hospital admission and apparently no symptoms related to the COVID infection.  Ex. A at 15 (docket no. 52).  He received the Pfizer vaccine in early 2021 and a booster dose in December 2021.  *See id.* at 33.  Having considered the necessary factors, the Court concludes that defendant has not established "extraordinary and compelling reasons" to support a reduction in his sentence. Defendant is generally in good health, having suffered no lasting adverse effect from a prior bout of COVID, and his current motion merely raises generalized concerns that do not support a reduction in his sentence.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Hong*, No. CR17-163, 2021 WL 1293429, at *2 (W.D. Wash. Apr. 2, 2021).

C. **Conditions at FCI Fort Dix:**

Defendant also relies on the existence of COVID within the BOP system and at FCI Fort Dix, where he is housed.  Defendant contends that FCI Fort Dix's structural

ORDER - 4

design and pandemic protocols, including the decision to accept prisoners transferred from the Elkton Federal Correctional Institution in Lisbon, Ohio, render him unable to engage in the self-care necessary to avoid infection with the coronavirus that causes COVID.  This argument misconstrues the application notes to USSG § 1B1.13, which envision that a defendant's physical and/or mental condition constitutes an "extraordinary and compelling" reason for compassionate release when it is so compromised that it can no longer be managed in prison.  See Riley v. United States, Nos. C19-1522 & CR14-113, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020).  By focusing on external factors inherent in confinement or the facility or arising from BOP's procedures, defendant merely identifies factors affecting the risk of contagion for everyone at the correctional institution, and offers no means of identifying specific individuals who are deserving of compassionate release.  See Powers, 2020 WL 3605748, at *2.

D. **Danger to the Community**

Even if defendant could demonstrate the requisite exhaustion of administrative remedies and an "extraordinary and compelling" reason to reduce his sentence, the Court would not authorize his immediate release.  A defendant may be granted compassionate release only if he or she is "not a danger to the safety of any other person or to the community," as evaluated in the manner outlined in 18 U.S.C. § 3142(g).  See USSG § 1B1.13(2).  Defendant has not made the necessary showing under the relevant factors, namely (i) the nature and circumstances of the charged offenses, relating in this case to a drug-smuggling operation crossing the border between the United States and Canada as to which defendant undisputedly had a leadership role, see Plea Agr. at ¶¶ 10 & 11(b)

ORDER - 5

(docket no. 22); (ii) defendant's history and characteristics, including his violation of prison rules (by possessing a non-hazardous tool) for which he was sanctioned in 2020, see Ex. C (docket no. 50-1 at 2); and (iii) the nature and seriousness of the danger to any person or the community that would be associated with defendant's release, particularly, for purposes of this matter, individuals who cooperated with the Government, one of whom had been persuaded to falsely recant his prior statements implicating defendant and was later shot several times, shortly after defendant lost his battle to avoid extradition, see Presentence Investigation Report at ¶¶ 24–29 (docket no. 28). See 18 U.S.C. §§ 3142(g)(1), (3), & (4), and 3553(a)(1) & (a)(2)(C). The Court concludes that defendant would pose a serious danger to the community if he were released prematurely from prison.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's pro se motion for compassionate release, docket no. 45, is DENIED without prejudice for lack of jurisdiction because defendant has not exhausted his administrative remedies;

(2) Even if defendant's motion was properly before the Court, the Court would deny defendant's request for compassionate release because defendant's medical conditions and the conditions at FCI Fort Dix do not constitute "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i), and/or because defendant's early release from prison would pose a risk of danger to others and the community; and

ORDER - 6

(3)     The Clerk is directed to send a copy of this Order to all counsel of record and to defendant pro se.

IT IS SO ORDERED.

Dated this 1st day of April, 2022.

                                              Thomas S. Zilly
                                              United States District Judge

ORDER - 7